Lacassagne vs. Abraham & Son et al.

* * *

No. 12,966.

Laurent Lacassagne vs. H. Abraham & Son, et al.

## Syllabus.

1. A mortgagee in good faith, accepting his mortgage on the faith of a recorded title, based on a conveyance made by a husband as head and master of the community, is not affected by the fraud imputed to the husband with respect to his wife.

2. Such a mortgage is not within the prohibition of alienation of property, prescribed by the Code, pending suit for recovery of the property—the mortgagee being no party to such suit.

3. A mortgage is, in the purview of the law, a *quasi*-alienation; the seizure and sale of the property under it the exercise of the remedy and the consequence of the mortgage.

APPEAL from the Seventeenth Judicial District Court for the Parish of Vermillion.—*Bourges, J. ad hoc.*

*W. S. Benedict* and *Don Caffery & Son* for Plaintiff and Appellant.

*W. A. White, Dinkelspiel & Hart*, for Abraham & Son, Defendants and Appellees.

*H. S. Suthon, Albert Voorhies* and *W. J. Formento*, for Widow .J. C. Cavé Cavailhez, etc., and Widow C. F. Remick, Defendants, Appellees.

Argued and submitted December 23, 1898.
Opinion handed down March 20, 1899. ·

The opinion of the court was prepared in greater part by Mr. Justice Miller prior to his decease; acted on and adopted as the judgment of the court after his decease.

Completed and handed down by

Blanchard, J.   This is an appeal by plaintiff from the judgment dissolving the injunction obtained by him to prevent the seizure and sale of a plantation of which he claims to be the owner, under a judgment of one of the defendants against another defendant, F. Chapuis.

The facts of this complicated litigation are:   J. B. Cavailhez, a Frenchman, acquired the plantation, the subject of controversy, in 1869; he and his reputed wife made a donation of the property to their daughter; the donation not proving effective for some cause not material to this discussion, was followed by a sale to Remick, the husband of the daughter; Cavailhez, his reputed wife and their son-in-law, Remick, subsequently died, and at the sale of the property of the latter's succession his widow, Marceline Remick, acquired the property.

All these titles were duly recorded.

On the faith of her title, Mrs. Remick, in 1883, obtained a loan, and to secure its payment mortgaged the property to A. L. Maxwell.

Thereafter, Jeanne Caroline Cavé, claiming to have been married to J. B. Cavailhez in France in 1833, brought a suit in the United States Circuit Court for the Western District of Louisiana, alleging her marriage fifty years before; representing that the subsequent marriage of Cavailhez in Louisiana was void; asserted her title, as widow,

to one-half of the property acquired by Cavailhez, including the plantation; and averred that he was indebted to her, and that she had a mortgage on the other half of the plantation to secure that indebtedness. The petition also attacked the donation by Cavailhez to his daughter and his sale to Remick as in fraud of her rights as his wife.

The judgment of the Circuit Court, rendered in January, 1886, decreed the petitioner to be the lawful wife of J. B. Cavailhez, annulled the donation by him, as well as his sale to Remick, and recognized the wife's rights to the full extent claimed in her petition.

This suit was directed only against Mrs. Remick, individually and as tutrix, the sole survivor of those the bill charged had combined and conspired to deprive the complainant of her rights as the wife of J. B. Cavailhez.

While this litigation of J. Caroline Cavé, alleging herself to be the widow of J. B. Cavailhez, was in progress, Maxwell, no party to the litigation, conceiving that his mortgage granted by the recorded owner before the widow Cavailhez made her appearance to set up her claims under the marriage in France of fifty years before, was wholly unaffected by that suit, instituted proceedings on his mortgage claim, seized and sold the property, he and Lacassagne becoming the purchasers thereof on the —— August, 1885. They entered into possession.

In April, 1886, Mrs. Cavé Cavailhez caused a writ of possession to issue on her judgment in the United States Circuit Court, under which she sought to dispossess Lacassagne, he having become sole owner by purchase of Maxwell's interest. Whereupon Lacassagne filed a bill in the United States Circuit Court, and averring his ownership and possession and that he was neither a party to, nor bound by a decree in the suit of Mrs. Cavé Cavailhez against Mrs. Remick, obtained a writ of injunction to restrain the execution of the writ of possession.

The case found its way to the Supreme Court of the United States and that tribunal held that the remedy of Lacassagne was at law, not in equity; and that if the mortgage was superior to the right of the Widow Cavailhez his remedy at law was ample.. The court, in its opinion, referred to the fact that his title had been acquired subsequent to the suit of the widow, and thought the article of our Code avoiding alienations of property pending suit for its recovery, applied.

The bill was dismissed with full reservation to Lacassagne to enforce his rights at law.

While this litigation was pending in the Supreme Court, the Widow Cavailhez died, and her will constituted F. Chapuis her executor and legatee. He mortgaged the property to Abraham & Son, under whose execution the property was about to be sold.

At this juncture, Lacassagne, remitted by the decree of the United States Supreme Court to the assertion of his rights at law, enjoined the sale under the execution of Chapuis' creditors, setting up his title to the property.

This is the suit now before us on a second appeal, the first having been determined by us in 1896. 48 Ann., 1160.

On the previous appeal the defense pleaded was *res judicata*, based on the decree obtained in the suit of Widow Cavailhez against Mrs. Remick. That defense, as well as the other aspects of the case argued, received our attention. We held that the plea of *res judicata*, based on a decree in a suit to which Lacassagne was no party, could not be sustained as against him. The argument there took a wide range and asserted in its general effect that the mortgage granted by the recorded owner before the claims of the Widow Cavailhez were made known, could not be enforced by the seizure and sale of the property because of the suit of Mrs. Cavailhez to establish her rights as his widow based on the marriage in France in 1833.

But our decision maintained that the mortgagee in good faith, acquiring his mortgage on the faith of the recorded title based on the conveyance of J. B. Cavailhez, could not be affected by any fraud imputed to Cavailhez with respect to the wife it is claimed he married in France before he came to Louisiana, and that the enforcement of such a mortgage, created prior to the suit of the widow, was not within the inhibition of alienation of property pending suit for its recovery. Our decree, overruling the plea of *res judicata*, remanded the case for trial on its merits.

On the second trial the defendants supplemented their pleadings by urging the exception of *res judicata* based on the decree of the Supreme Court of the United States on the bill filed by Lacassagne to enjoin the writ of possession issued in the suit of the Widow Cavailhez against Mrs. Remick. 144 U. S., 119. On this exception, as well as on the merits, the lower court rendered judgment in defendant's favor and the case is again before us on appeal.

The first inquiry is as to the right conferred by the mortgage of this property to Maxwell in 1883, as the plaintiff's title is based on that mortgage, and the mortgage is based on the sale of the property in 1869 by J. B. Cavailhez. He was the "head and master," as our Code expresses it, of the community. Whether married in France before he came to Louisiana and contracted the marriage here, is unimportant in testing the effect of his sale of the property, involved in this controversy, in 1869. The power of disposition was his and the title made by him, and spread on the public records, gave validity to any subsequent sale or mortgage created on the faith of that title.

If the husband alienates the community property by any fraud to the injury of his wife the law gives to her an action against him and his heirs, but the sale by him is entirely valid as to third persons who in good faith have acquired rights on the faith of the title he spreads on the public records. It is a proposition we deem beyond reasonable controversy that the mortgage to Maxwell, based on the title to the vendee of J. B. Cavailhez, and which had stood unquestioned on the public records for fifteen years before Widow Cavailhez asserted her rights under the marriage contracted in France, was not assailable by her. This proposition is based on the protection accorded those who act on the faith of the public records, so often recognized by our courts and of general recognition in every system of jurisprudence. It is bottomed upon the principle that the true owner, whoever he may be, is bound by the title he puts on the public records, so far as respects third persons *bona fide* acquiring rights on the faith of that title.

If the mortgage granted in 1883 was securely protected by law and jurisprudence, it gave to the creditor the right to foreclose it. We can not conceive that this right, so essential to the creditor, could be taken away by a suit brought afterward by the wife asserting her right to the community, subordinated, as are all her rights, to the power of the husband to mortgage or alienate the community property.

The mortgage creditor, exerting the remedy given him by the contract, seized and sold the property for his debt, and the title passing at the sale was completely vested in the plaintiff Lacassagne.

The contention is that the sale was void because the suit of the Widow Cavailhez was pending. Although the Maxwell mortgage was of record when the suit was brought she carefully abstained from making him a party. The argument seeks to apply the provision of

our law which forbids alienations, pending a suit to recover property, to the prejudice of the plaintiff bringing the suit.

The article of the Code embodying this provision has clear application to cases of alienation pure and simple, not to the enforcement of rights created before the suit was brought. The mortgage created a right to seize and sell the property for the payment of the debt. Under our law the mortgage is a *quasi* alienation. The seizure and sale is the exercise of the remedy, and is the consequence of the mortgage. If, then, the mortgage is to be deemed an alienation, the title of the plaintiff is not within the scope of the provision forbidding alienations pending the suit, for the mortgage was granted before the suit.

There are expressions in the reasoning of the United States Supreme Court, which taken literally and severed from the context and decree, may seem to give color to defendants' pretensions as to the scope and effect of that decree. But the ground that the plaintiff's remedy was at law disposed of the case, and points to the decree as containing all that constitutes *res judicata* in any sense known to the law. That decree simply and only dismissed the bill with full reservation to plaintiff to enforce his rights at law.

Now, what right could he enforce? The mortgage had merged in the title. The Supreme Court could not have contemplated a suit on a mortgage changed into another right. To remit him to some supposed remedy on a mortgage exposed both to the defense of peremption and that of prescription would have been to substitute a mere shadow for the substance of Lacassagne's right. The decree reserved his legal rights given him by the mortgage. Following that decree, when Lacassagne found the property seized under the execution of the creditor of Chapuis, the legatee of the Widow Cavailhez, he resorted to the remedy given him by our law. He asserted his title to the property attempted to be levied on as the property of another, and, in our view, adopted the only practicable method of exercising the right left to him by the Supreme Court.

Under the mortgage granted by the head of the community, clothed with full competency to grant it wholly irrespective of whether he had or had not married in France, the mortgage creditor had the right to seize and sell the property in whose hands so ever it might be without regard to any change of title by suit, alienation, descent, or any other mode.

On what theory, then, are we to hold that the suit to establish the

French marriage of Cavailhez denuded the mortgage of the right it gave the creditor to seize and sell? To so hold would be to simply change our jurisprudence and overthrow a rule of property.

Nor do we appreciate that the Supreme Court of the United States in the decision now pleaded as *res judicata* and as effective and intended to destroy the creditor's right to foreclose his mortgage, as sustaining any such contention. The case presented to that court was a bill in equity to restrain the execution of the writ of possession issued by Widow Cavailhez on her judgment against Marceline Diaz, widow of C. H. Remick, deceased.

The plaintiff here, the complainant in that suit, averred his title and possession as the basis for the relief he sought. The court held the plaintiff's remedy was at law, not in equity. We do not think the question of Lacassagne's title was passed upon, or intended to be passed upon in that decision. What the court declared and held was that, on the showing made, "a court of equity can not give the plaintiff any relief until he has established his title by an action at law." 144 U. S., 124. And all his rights with respect to such action at law were reserved to him.

We hold the present suit to be such "action at law" as there contemplated, coupled with injunction to prevent the property being sold under execution for the debt of another alleged not to be the owner. The necessary parties are before the court to adjudicate the question of title raised, and that the suit involves the title is shown by the averments of the petition and by its prayer, which is that plaintiff be decreed the owner of the property and sent into possession thereof.

On the issue thus presented we think the case is with the plaintiff, and that his claim of ownership must be sustained, and his right of possession enforced.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is avoided and reversed, and proceeding to render such judgment as should have been rendered in the first instance, it is now ordered and decreed that the estate of Laurent Lacassagne, deceased, represented by Marie L. Casey, as administratrix thereof, be and is recognized as the owner of the property described in the petition filed, and, as such, that she be sent into possession thereof, for which purpose a writ of possession is directed to issue.

It is further ordered, etc., that the injunction issued herein be sus-

tained and perpetuated, and that the property be held free from any incumbrance placed upon the same by defendant, F. Chapuis, or asserted against it by defendants, H. Abraham & Son.

It is further ordered, etc., that defendants pay all costs of both courts.

MR. JUSTICE BREAUX dissents.

In this case the defendants obtained a writ of error from the Supreme Court of the United States, directed to the Supreme Court of Louisiana.