No. 13,995.

MRS. MARY LEE SCOVELL ET AL. VS. HEIRS OF LEVY ET AL.

### SYLLABUS.

1. A mortgagee has the right to executory process upon the property of an insolvent. Statute 15 of 1894.

2. The substitution of a special to a general mortgage and a partition of the property left the minors without interest in the property and without right to a collateral attack upon the release of the mortgage, or upon the partition.

3. The error of father and tutor, if any error has been committed, cannot equitably be corrected at the expense of innocent third persons.

4. Minors, as well as majors, cannot claim a right upon the property disposed of in a partition which has not been reserved, as long as the proceedings are not attacked in a direct action. The record kept by competent authority has great force when innocent third persons are concerned.

5. In establishing the residuum of the community, that is, its assets, after having deducted the debts from the active mass, only debts of the community are to be deducted, and not debts that have been secured by special mortgage in favor of minors in proceedings instituted to that end.

APPEAL from the First Judicial District, Parish of Caddo—*Wells, J., ad hoc.*

*Thomas Fletcher Bell,* for Plaintiffs, Appellants.

*Alexander & Wilkinson* and *Holbert & Barret,* for Defendants, Appellees.

The opinion of the court was delivered by

BREAUX, J.    Defendants, owners of a mortgage by inheritance from their late father S. Levy, Jr., sought to foreclose it in accordance with its terms.    The act of mortgage is dated July 25th, 1893, and was executed by S. J. Zeigler in favor of S. Levy, Jr.    Mrs. S. E. Zeigler, the wife of the first marriage of S. J. Zeigler, died on April 8th, 1885. She was a creditor of the community existing between her and her husband for paraphernal funds which her husband had received and converted to his own use.    Prior to his second marriage, S. J. Zeigler qualified as tutor of his children, issue of his marriage with his late wife Mrs. S. E. Zeigler.    An inventory was made of the property showing large assets.    The property in controversy in this case was

part of the assets carried on that inventory. It was bought from the Succession of S. W. Vance during the life of the former wife of S. J. Zeigler and it belonged to the community which had existed between S. J. Zeigler and his late wife, the mother of petitioners in injunction to which we will refer again later.

Plaintiffs, children of the first marriage, sued out an injunction to restrain defendants and the sheriff from selling the property in question, on the ground that at the date of the dissolution of the community between their father and mother, it belonged one-half to them, and the other to their father; that besides their father was indebted to their mother in a large amount which they inherited and which is secured by preference on all property of the community; that their rights could not be defeated or dislodged by any act of their father after the dissolution of the community; that defendants' mortgage can embrace only a *residuum* after the discharge of the community debts. On this point they invoke the decision in Newman vs. Cooper, 50 Ann. 1206, and Prior vs. Giddens, 50 Ann. 216, and aver that the *residuum* of the community can be ascertained only by a liquidation and settlement of the community inside of the insolvency proceedings in matter of Estate of S. J. Zeigler, a "declared insolvent."

Defendants sought to meet the questions propounded by plaintiffs by urging that about the eighteenth day of October, 1884, the father of plaintiffs, S. J. Zeigler, during the community with the mother of plaintiffs, Mrs. S. E. Zeigler, purchased the property as before mentioned from the Succession of S. W. Vance; that during the community, while their mother, Mrs. S. E. Zeigler, was living, their father, S. E. Zeigler, sold an undivided half interest to S. E., M. B. C., and S. W. Vance; that afterwards they, the Vances, and S. J. Zeigler, partitioned the property into equal parts, the Vances taking the north half and S. J. Zeigler, their father, the south half; that at the date of the partition, the mother of plaintiffs, Mrs. S. E. Ziegler, had departed this life, but that plaintiffs, who were then minors, were legally represented in the proceedings of partition and that, besides, since the act of partition, and since their emancipation or majority, they have ratified the act of partition, and that they are estopped from denying the validity of the act.

The further fact is pleaded by defendants that, after the partition, S. J. Zeigler sold his interest in this property to S. W. Vance; that he also shortly afterward sold the interest of plaintiffs, then minors, to

the same purchaser, just named, in accordance with the recommendations of a family meeting legally convoked and held for that purpose and duly homologated, which sale divested all interest of the minors, now majors, and plaintiffs here; that this purchaser, Vance, in 1891, mortgaged the property to Norman F. Thompson, and, subsequently, he executed a second mortgage of which their father, S. Levy, Jr., became the owner; that their father foreclosed his mortgage and bought the property at sheriff's sale; that, thereafter, their father, Levy, Sr., continued to own the property until 1893, and in that year Levy, Sr., sold it to S. J. Zeigler, reserving, to secure the price, a mortgage and vendor's privilege, and it is this price they are now seeking to recover, as heirs of their father, S. Levy, Sr.

They aver that plaintiffs have no mortgage or any other claim on the property, and that they (defendants) are entitled to continue in foreclosing their own mortgage. This was the view of the District Court. From the judgment rejecting plaintiffs' demand and ordering the sheriff to proceed with the sale of the property, plaintiffs prosecute this appeal.

We do not infer that the learned counsel for plaintiffs objects to the foreclosure proceedings on the ground that Act 15 of 1894 has no application. That act specially provides that the holder of special mortgages, as in this case containing the pact *de non alienando*, shall not lose the right to executory process upon the property of insolvents and from this it is obvious that the act of surrender constituted no bar to direct foreclosure.

This, we understand, plaintiffs do not controvert, but urge that the fact that the mortgage rests upon the property of a dissolved community owing community debts, unsettled, renders it necessary to settle the community and establish the *residuum* before foreclosure.

If the property be community property and subject to community debts, a disposition or attempted disposition of it to the prejudice of the creditors may be enjoined and restrained, but if it be not property subject to the rights of creditors, there is no reason to arrest foreclosure proceedings. It remains for us to determine whether the property involved in this suit was community property and, as such, is still subject to the payment of the debts of the community.

Many of the issues have already been decided. It may well be said that "every crack and cranny" of the points involved have heretofore been examined and studied. In the different suits decided, rights claimed by plaintiffs were recognized as contended for by them in the

suit now before us for decision, but plaintiffs seek to extend the scope of their rights to a limit never intended by the decisions in question and not covered by their text. Citing Zeigler vs. His Creditors, 49 Ann. 144, plaintiffs point out that the judgment decrees that this claim (that is plaintiffs' claim) needs no registry. But here it remains the plaintiffs are not interested as creditors of a community. Their legal mortgage was cancelled and erased from the record and with the advice of a family meeting a special mortgage was substituted. In the decision cited *infra,* their rights are considered at some length. In the decree in this case, to which we have just referred, the court restricts the rights of the minors to the general and special mortgage in their favor *on the property authorized* to be specially mortgaged in their favor. (Italics ours). Zeigler vs. His Creditors, 49 Ann. 186. This clearly enough limited all rights of the minors growing out of the tutorship of their father. This sets at rest all claims which they once had against their father, who was their tutor, on other property than that mortgaged as just stated.

But these are not the only proceedings operating as a bar to plaintiffs' suit. A partition suit was instituted in 1891. The following briefly sets forth the ownership of the property and the right of owners having undivided interests to proceedings in partition.

S. J. Zeigler bought the property in 1884 at the succession sale of S. W. Vance. His wife was living. She was also alive when he sold an undivided interest to Mrs. S. E. Vance, Miss M. B. G. Vance, and S. W. Vance. We have noted that Zeigler's wife died in 1886. The Vances, with the plaintiffs, were the owners in indivision at the date that the said partition was provoked and duly made, in accordance with the terms of a family meeting duly homologated.

The following is the admission of record regarding the partition: "also admitted that on June 13th, 1891, S. E., M. B. G., and S. W. Vance filed a petition in the First Judicial District Court for a partition at private sale of Buckhall plantation," part of which is the subject of this controversy. Then follows evidence that the partition was made.

In order to have the facts in juxtaposition, we here state that S. J. Zeigler, after this partition had been made, sold to Vance; Vance mortgaged to Levy; Levy foreclosed the mortgage made by Vance; Vance bought in the property, and sold it to Zeigler, retaining vendor's mortgage which he now seeks to enforce.

The owners in indivision divided the property. The act evidencing the partition was recorded, and third persons had the right to conclude, as they did, that the property was free from any claim on the part of those who were parties to the deed of partition. After the partition, the property was mortgaged and sold as just above stated and title acquired. It has been repeatedly held that while third persons, acting under rules of court, must look to the jurisdiction of the court, the truth of the record concerning matters within its jurisdiction cannot be disputed. Webb vs. Keller, 39 A. 55.

It must be borne in mind that all mortgages or claims on the property had been cancelled even some time before the partition, that is, at the date that a special mortgage was substituted to the general mortgage as we have before stated.

Plaintiffs, as paraphernal creditors of their father, claim that their rights as creditors accrued and attached to all the community. This we take, as being generally correct, not to the extent, however, of continuing to be creditors to be paid out of the proceeds of property that has been sold to effect a partition in proceedings in which they are parties. The question is completely answered in Chopin vs. Bank, 47 Ann. 660, in which the court held that "the suit for a partition calls on the defendants to urge all the defenses on which they propose to rely, and the decree for a partition concludes them from any attack on the plaintiff's title, the basis of their demand for a partition." See also Hewes vs. Baxter, 45 Ann. 1049.

On appeal, in a case in which plaintiffs were parties regarding error urged by them to have been committed to their prejudice by their tutor and others who acted in their behalf in matter of rights inherited from their mother, this court said: "The minors were in court as defendants through special tutors, and the parties litigating were in reality all joint owners. The only effect of the error would be that in the ultimate partitioning or division as between the father and his children, he would be chargeable toward the minors for the amount of their actual interest in the property." Having thus determined, we could not anywhere find support in jurisprudence for changing the situation by holding that the father and tutor is not chargeable with errors, if any have been committed, but that they must be corrected at the expense of third persons who acted on the faith of recorded titles.

We feel no hesitation in arriving at that conclusion in view of the fact that the minor's general mortgage was commuted to a special mortgage before the partition in question was made.

Lastly, should this claim be brought into the insolvency proceedings, and the executory process stopped in order to refer the mortgage to those proceedings? We find it impossible, consistently with our view of the law, thus to decree. Defendants are creditors whose claims are secured by mortgage. By special statute, they are authorized to foreclose and recover the amount of their claim in foreclosure proceedings. They as mortgage creditors cannot be forced into insolvency proceedings.

For these reasons, the judgment appealed from is affirmed.

Rehearing refused.