DUFOUR, J.
This suit is an echo of certain litigation which, in its various phases, has several times before engaged the attention of this court.
Mrs. M. L. Scovell and Mrs. Charles L. Gaines claim, as owners by inheritance from their deceased mother, Sallie E. Vance, wife of S. J. Zeigler, an undivided one-fourth interest in “North Buckhall,” a continuous plantation situated partly in each of the parishes of Caddo and Bossier. They further ask for an accounting for one-fourth of the rents and revenues, for a partition by lieitation, and for the recognition with preference of certain paraphernal rights against another undivided one-fourth of the property.
There is no dispute as to the material facts of this case.
In 1877, S. J. Zeigler and Sallie E. Vance were married. They had four children as issue of their marriage, to wit, Susie, Sadie, Mary. Lee, and Vinnie. In 1884, Zeigler bought Buckhall. During his wife’s lifetime, he sold to S. E., M. B. G., and S. W» Vance an undivided one-half interest in the plantation. In 1885, Mrs. Zeigler died, devising to her husband an undivided one-fourth interest in her estate and the balance to her four minor children. In 1887, Susie, one of these children, died, and, in 1891, Sadie, another of them, died. In 1887, Zeigler contracted another marriage.
In 1888, without regard to the interests of the Zeigler minors, and without having them made parties to the proceeding, the Vances and Zeigler, acting in his individual capacity, made a conventional partition, sale, or exchange among themselves, by which the Vances received the north half and Zeigler received the south half of Buckhall.
On June 16, 1891, Zeigler sold to S. W. Vance his interest in the whole of Buckhall; in the parishes of Caddo and Bossier both.
Apparently disregarding the previous conventional partition, the Vances, on June 18, 1891, filed a petition in the district court of Caddo parish, alleging that the minors Mary Lee and Vinnie Zeigler (present plaintiffs) owned an undivided 21/12 s interest in Buck- *985 hall, and asking for a partition of the same by private sale under Act No. 25, p. 47, of 1878.
The minors were represented by S. J. Zeigler, their tutor, a family meeting was held, and under its recommendation, duly homologated, the tutor on June 19, 1891, by authentic act, purported to sell the minors’ interest for $4,600 cash to S. W. Vance.
In 1894, George Gilmer, undertutor of the minors, filed suit in Bossier parish against Zeigler, the Vances, and J. H. Stephens, who held a mortgage on the property given by S. E. and M. B. Vance, to rescind the sale of the minors’ interest on the ground that the price had not been paid in whole or in part.
In that suit, the minors claimed also an undivided 4Vi28 interest in the property by reversion, owing to their father’s remarrying. At this time, the Vances had not disposed of their interests; but S. E. and M. B. G. Vance had purported to mortgage an undivided two-thirds interest in the north half of Buekhall to J. H. Stephens, and S. W. Vance had given a mortgage to Zeigler on an undivided one-third interest. On April 27, 1904, judgment was rendered in that suit decreeing the present plaintiff to be the owner of a 2r/128 interest in the north half of Buck-hall, and also of an ii/128 interest in said north half of Buekhall in the parishes of Bossier and Caddo.
The other pertinent facts will be referred to as -they naturally arise in the course of this opinion.
The plaintiffs’ interest is traced as follows:
At the time of Mrs. Zeigler’s death, the Vances owned ®Vi2s by purchase from Zeigler; Zeigler 32/i2s as surviving partner in community, and s/i28 under his wife’s will, in all 4o/128; and the minor children together 24/i28, or each s/128 of the property.
When the two minor children died, Zeigler inherited from them - one-fourth of their interest, or s/i28, and the plaintiffs inherited from them three-fourths of their interest, or 9/128- Rev. Civ. Code, art. 911. When Zeigler contracted a second marriage, he forfeited to the plaintiffs, as sole surviving heirs of their mother and sisters, the interest acquired by him from his wife and deceased children, say ri/Ygs, and the plaintiffs thus became vested with a 32/i28, or a 14, interest, in the property.
The defendants’ title is traced as follows:
On March 4, 1901, the - heirs of Levy acquired the property from Hunter, who had acquired two-thirds thereof from Stephens on November 29, 1895, and one-third from the First National Bank of Shreveport on December 21, 1899.
Stephens .acquired his interest on June 2, 1894, at sheriff’s sale under a writ of seizure and sale issued to enforce a mortgage in favor of Stephens, executed by Sallie E. Vance and Mary B. G. Vance on February 20, 1893.
The First National Bank acquired its interest on February 25, 1899, at sheriff’s sale under a writ of seizure and sale in foreclosure of a mortgage given by S. W. Vance to Zeigler on July 23, 1889.
In support of their claim of ownership, the plaintiffs, in addition to the facts already outlined, urge that the judgment of the district court of Bossier, in the suit numbered 3,830, and entitled “Gilmer, Undertutor, v. Vance et al.,” recognizing them as the owners of an undivided fourth interest in the property, is res judicata against defendants.
The defendants’ contentions are:
(1) That plaintiffs have no title, such as they had, having been divested by the sale legally made in 1891 by their tutor, pursuant to an order of court based on the recommendation of a family meeting.
(2) That the judgment rendered in suit No. 3,830 was an absolute nullity, because the suit had abated by reason of a failure to prosecute it for more than five years after its institution.
*987 (3) That, as possessors in good faith under title translative of property, they are protected by the prescription of 10 years.
The various vendors are called in warranty.
It is not disputed that a suit brought against the vendor would be binding notice to his vendee, under article 2453, Rev. Oiv. Code, prohibiting alienations pendente lite; but it is denied that this rule is applicable to a mortgage created before the suit is brought or to a sale under that pre-existing mortgage.
In the case of Lacassagne v. Abraham, 48 La. Ann. 1161, 20 South. 672, and Id., 51 La. Ann. 840, 25 South. 441, relied on in support of that doctrine, we find that the court rested its conclusion on the ground that the mortgage creditor was not made a party to the suit. In the Gilmer suit, Zeigler, through his syndic, Stephens, and the Vances, were all made parties to the proceedings, and no appeal was taken from the judgment.
Mr. Justice MONROE and Mr. Justice PROVO STY are of the opinion that, according to the ruling in Lockhart v. Lockhart, 113 La. 872, 37 South. 860, the Gilmer suit must he deemed to have been abandoned, and cannot therefore be pleaded as res judicata against the defendant.
Their conclusion is that the plaintiffs are not entitled to recover the 21/12a alienated by their tutor under the order of court, but that they are entitled to the n/128 which the record and an admission it contains show never to have left their ownership, from the time they acquired it by the death of their minor sisters and the remarriage. of their father.
The Chief Justice concurs in this finding, and will assign his reasons.
Mr. Justice Nicholls adhers to his dissent in the Lockhart Case, and shares the views of the writer of this opinion, who dissents, on this point, for the following reasons:
In the Lockhart Case, plaintiffs had brought suit in 1895. In 1901, the defendants moved that the suit he dismissed on the ground that it had been abandoned; no steps having been taken in its prosecution for more than five years. The trial judge denied the motion, for the reason that Acts 1898, No. 107, p. 155, defining abandonment, should not be given retroactive effect. In 1903, the motion was renewed, and the dismissal of the suit was granted.
In affirming the judgment, this court said:
“The matter of abandonment was one of interpretation, depending upon circumstances and conduct, and subject to no fixed rule. It, was therefore, as we think, the purpose of the General Assembly to substitute certainty for uncertainty, * * * and to make it known when a suit is no longer pending in court because of its having been abandoned.”
General jurisprudence is to the effect that an act of the Legislature declaring the interpretation to be placed upon a previous law is not to be given retroactive operation.
“It is well understood as a fundamental principle in our system of government that the making of statutory laws, and their exposition and application to cases as they arise, are clearly and distinctly two different functions. The former is allotted by the Constitution to the Legislature; the latter to the courts.” Lincoln Building & Saving Ass’n v. Graham, 7 Neb. 180.
An expository act has not retroactive force because an act of judicial powers (Haley y. City of Philadelphia, 68 Pa. 45, 8 Am. Rep. 153), and there seems to be no reasonable principle on which expository statutes can be founded, except by regarding them as creative of a new law, and not as interpreting an old one.” West Branch Boom Co. v. Dodge, 31 Pa. 288.
See, also, City of New Orleans v. Vergnole, 33 La. Ann. 35; Kelsey v. Kendall, 48 Vt. 24; Dequindre v. Williams, 31 Ind. 450; McManning v. Farrar, 46 Mo. 376.
It follows from this that, as five years had not elapsed since the enactment of- the law of 1898, when the heirs of Levy bought in 1901, their purchase was made with notice of a suit pending, within the meaning of the law.
If, however, the act of 1898, p. 155, No. *989 107, amending article 3519, Rev. Civ. Code, be viewed as a statute of prescription, the conclusion reached must be the same.
In the Lockhart Case, there had been affirmative action by motion to dismiss made by the parties in interest.
In Geisenberger v. Cotton, 40 South. 929, 116 La. 651, this court said:
“The contention that the suit was abandoned for want of prosecution for five years was not made in the district court; but, on the contrary, the defendant waived the objection by answering to the merits.”
In the Gilmer suit, the parties in interest did not at the trial urge the prescription or abandonment of the suit, and, as late as April 27, 1904, answers were filed and new parties made.
Courts cannot supply pleas of prescription or extend the scope and effect of those that are presented. The defense urged in the instant suit is based on the alleged nullity of judgment for reasons existing before the claim was merged into judgment.
A judgment cannot be attacked collaterally, except for radical nullities apparent on the face of the record. There are only four grounds of absolute nullity of judgment: Want of jurisdiction in the court which rendered it, want of joinder of issue, want of representation, and want of citation of the parties in interest. Succession of Quin, 30 La. Ann. 947; Starnes v. Hadnot, 42 La. Ann. 369, 7 South. 672. It is not disputed that the Bossier parish court had jurisdiction, and that all the parties in interest were cited.
“Such a judgment is presumed to have, been regularly obtained, until the contrary is .shown in direct proceedings, and a collateral attempt is defined to be an attempt to impeach the decree in a.proceeding not instituted for the ex-loress purpose of annulling it.” Heirs of Brigot v. Brigot, 47 La. Ann. 1307, 17 South. 825; Equitable Securities Co. v. Block, 51 La. Ann. 482, 25 South. 271.
Act No. 107, p. 155, of 1898, amends article 3519, Rev. Oiv. Code, dealing with the interruption of prescription, and does not purport, to introduce into our law an additional ground of absolute nullity of judgment.
Mr. Justice Nieholls and the writer hold the view that the defendants cannot, under the circumstances of the case, now attack, the judgment acquiesced in by their authors,, after proceedings contradictorily had; that they are bound by the same; and hence the plaintiffs should recover one-fourth of the-property.
When S. W. Vance, in 1889, mortgaged an undivided one-third interest to Zeigler, he, in reality, owned one-sixth only. When the pretended partition of 1889 was set aside and nullified by the judicial proceedings of the-parties thereto, S. W. Vance became the owner of one-fourth more by his purchase or quitclaim from Zeigler, or in all five-twelfths. Upon this interest, up to one-third of the whole ownership, the mortgage given in 1889-became valid and effective. Rev. Civ. Code, art. 330.
So far as regards this one-third interest-acquired by Hunter from the First National. Bank, one of the warrantors herein, the exercise of the plaintiffs’ rights must be limited by the terms of a written waiver in the record.
It appears that on November 29, 1899, the-plaintiffs, in part consideration of their purchase of Shady Grove plantation, released to the bank all their rights, titles, or claims, as. owners and as creditors of their tutor, Zeigler, “in and to that portion of the property purchased by the First National Bank of Shreveport at sheriff’s sale, in the suit of' First National Bank v. S. W. Vance; said property being known as part of ‘Buckhall.’
Giving full effect to this waiver, it is clear-that it can apply only to the four-twelfths, which were bought by the bank and by it. sold to Hunter, and that there still remains, in S. W. Vance a one-twelfth interest, which does not appear to have been acquired by *991 defendants. When Mrs. Vance and Miss Vance mortgaged a two-thirds interest to Stephens, they evidently based their ownership on the conventional partition. When this was annulled by their subsequent partition •suit, they were in reality the owners of an undivided one-sixth each, the interest originally acquired by them from Zeigler. It was this one-third interest alone, and not two-thirds, which under Stephens’ mortgage and purchase passed to him, and thence to Hunter and the Levy heirs.
The status of the ownership would now appear to be as follows: The Levy heirs acquired four-twelfths through the sale under S. W. Vance’s mortgage, four-twelfths through the sale under Mrs. and Miss Vance’s mortgage, in all eight-twelfths. The plaintiffs by their judgment recovered the three-twelfths inherited by them and illegally held by S. W. Vance, and S. W. Vance has never been divested of the one-twelfth remaining out of the three-twelfths acquired by him from Zeigler, after taking therefrom the two-twelfths necessary to perfect the mortgage of one-third of the whole given by him.
As Hunter’s vendees are not being evicted from the portion sold to him by the bank, it is clear that he cannot hold the latter in warranty.
Moreover, as is urged by the bank in its .answer to the call in warranty, were it otherwise, he failed to protect himself by appearing in the Gilmer suit to assert the waiver •against the plaintiffs’ demand of ownership. Rev. Civ. Code, art. 2518.
The waiver was in November., 1899, the bank sold to Hunter in December, 1®99, and the judgment in the Gilmer suit was not rendered until April 27,1904.
The defendants must answer for plaintiffs’ proportion of the rents, plaintiffs must correspondingly answer for their proportion of the taxes, and defendants must recover the value of the improvements put upon the property.
On August 5, 1901, defendants, through their attorneys, judicially admitted that the plaintiffs were the owners of 11/i28 of the property. From that moment and to that extent they ceased to be in good faith.
We now pass to the question of the plaintiffs’ claim, to be paid, by preference, out of the proceeds of that portion of the property not covered by their claims of ownership, an amount due them as creditors of the community existing between their father and their mother.
In Zeigler v. Creditors, 49 La. Ann. 144, 21 South. 666, this court recognized the right of these plaintiffs to be paid, out of the mass of the proceeds of the community property, in preference to their father’s creditors, any indebtedness by reason of any paraphernal funds of their mother having been received by their father and applied to the benefit of the community.
In Lee v. Syndics, 52 La. Ann. 1460, 27 South. 739, and by another judgment not appealed from, the amount of the claim was liquidated, and the balance now due thereon amounts to $10,163.36.
The plaintiffs now plead as res judicata on this point the decree of this court in Thompson v. Vance, Heirs of Levy, Third Opponents, 111 La. 548, 35 South. 741, in which their claim as- community creditors was awarded priority over that of the Levy heirs.
Defendants similarly plead as res judicata the decree of this court in Scovell v. Levy’s Heirs, 106 La. 118, 30 South. 322, in which the Levy heirs, as mortgagees, were given priority over the present plaintiffs’ claim as community creditors. The litigation in the foregoing cases had reference to “South Buckhall.”
Both pleas must be overruled. Article 2286, Rev. Civ. Code, is as follows:
“The authority of the thing adjudged takes place only in respect to what was the object, of the judgment. The thing demanded must be the same; the demand must be founded on the *993 same cause of action; the demand must he between the same parties, and formed by them against each other in the same qualities.”
Whatever may be the views of the Supreme Court of the United States and of the other courts, this court has uniformly followed the language of the Code, and insisted that, in order to constitute res judicata, the thing demanded and the object of the judgment must be the same.
In State v. Sugar Refining Co., 108 La. 603, 32 South. 965, this court held, after full review of the authorities, that, although in both cases, the law invoked and the nature of the business were the same, a judgment in a suit for a license of one year could not be pleaded as res judicata to a suit for a license for another year; the things demanded not being identical.
By parity of reasoning, judgments having reference to assertions of claims on South Buckhall have not the force of the thing adjudged in reference to the assertion of claims against North Buckhall; the things which are the object of the judgment not being identical.
The question of the minors’ right to enforce their paraphernal claims against the property in the hands of defendants is therefore presented unhampered by any previous decrees.
In Thompson v. Vance, 110 La. 26, 34 South. 112, the question received full consideration, and, after a thorough review of the authorities, Judge Moore, of the Court of Appeal, called in by reason of a division, with the concurrence of two of the justices of this court, announced the law and jurisprudence of this state to be as follows:
“(1) That community creditors are entitled to a priority on community property, and that no creditor of the spouses nor any purchaser of the survivor’s right of ownership can acquire any right upon such property except in subordination to the payment of community debts.
“(2) That where minor heirs inherit from their deceased mother a paraphernal claim against the community, and their father qualifies as their tutor, the legal mortgage resulting therefrom in their favor does not absorb their claim as community creditors and alter the chai'acter of that claim from one due by the community to one due by the tutor.
“(3) That the right which a community creditor has to be preferred in the payment of his debt out of the proceeds of the sale of community property, being secured neither by privilege nor by mortgage, technically speaking, registry of the claim is not necessary in order to enable the creditor to enforce it against third persons who have acquired rights on the property.”
The foregoing conclusions are based on what appears to have been a practically continuous current of authority, and, on re-examination, no good ground is found for a contrary view.
We do not think that the doctrine “is in conflict with the letter and spirit of our law, both constitutional and statutory, abolishing tacit mortgages” (Thompson v. Vance, 111 La. 554, 35 South. 744), for the plain reason that the preference given to the community debt does not result from either mortgage or privilege, but from the nature of the tenure of the property.
Hence the provisions of article 123 of the Constitution of 1868 in reference to registry are inapplicable.
Leaving out of consideration the cases anterior to 1868, we find that in several cases decided since, notably Zeigler v. His Creditors, 49 La. Ann. 144, 21 South. 666, this court has sanctioned the doctrine which found its last expression in Thompson v. Vance.
It is not advisable at this late day to change the rule of jurisprudence on this point. If hardship results from its enforcement, the appeal for the correction of the evil should be made to the Legislature, and not to the courts.
The Chief Justice dissents from that view, for the reasons assigned in his opinion in Scovell v. Levy’s Heirs, 106 La. 118, 30 South. 322, which he considers to be based on the doctrine in the Zeigler Case, and he further thinks the plea of res judicata should be maintained.
*995 See dissenting opinion of MONROE, J., and concurring opinions of BREAUX, O. J., and PROVOSTY, J., 43 South. 646-648.