The opinion of the court was delivered by
Miller, J.
This appeal is by plaintiff from the judgment dismissing his suit, asserting title to property accompanied with an injunction to maintain his possession sought to be disturbed by a seizure and sale under the writ issued in the suit of one of the defendants against F. Chapuis, the petition alleging that the property of defendant is no manner bound for the defendants’ judgment on which the writ issued.
The property in controversy was acquired by Jean B. Oavailhezin 1869. The record shows a donation by Cavailhez and his wife Ernestine Diaz, to their daughter Marcelino, made in contemplation of her marriage with Clark H. Renick, followed soon after by the sale of the • property to him for fifteen thousand dollars, duly registered. Cavailhez and his wife died; he in 1882, and Ernestine Diaz before. O. H. Renick died, and at the sale of the property of his succession, his widow, Marcelino, in 1888 acquired the property purchased by her husband from Cavailhez. Soon after she mortgaged the property to Albert S. Maxwell, and failing to pay the debt, Maxwell instituted suit on the 21st May, 1885, seized, sold under his writ and became the purchaser, with plaintiff Lacassagne, of the property at the sheriff’s sale on the 15th August, 1885. Lacassagne afterward ■ bought Maxwell’s one-half interest, thus becoming owner of the whole property. All these titles and the mortgage to Renick were duly recorded.
In 1884, fifteen years, after Cavailhez’ sale to Remick, and subsequent to the purchase by Mrs. Renick and her mortgage to Maxwell, a suit was brought in the United States Court for the Western Dis *1162 trict, by Mrs. Jean Cavailhez, alleging herself to be the wife of Jean B. Cavailhez by the marriage she claimed to have been contracted in France in 1833, and seeking to recover the property conveyed by Cavailhez to Renick in 1869. The averments of her bill were, substantially, that the alleged marriage of Cavailhez and Ernestine Diaz was void; that the property involved in this controversy, acquired during the marriage, fell into the community ; that the sale from Cavailhez to Remick was designed to defeat her rights as the wife of Cavailhez, by transferring the property to the issue of “ the unlawful wife;” that the price stated to have been paid by Renick was never paid, but consisted, in fact, of the amount settled in dowry by Cavailhez on his daughter; that the donation and sale were in fraudem legis and void ; the bill further averred the indebtedness of Cavailhez to the oratrix for her separate funds, received by him in France, for which she had the legal mortgage of the wife on her husband’s property, and contained the usual charges of bills in equity, of combination and conspiracy of Cavailhez, Ernestine Diaz and her daughter, Mrs. Remick, to deprive the oratrix of her rights. It will be perceived that the only survivor of those whose acts were arraigned in the bill was Mrs. Remick, the sole party defendant, and process against her was prayed in her capacity of tutrix of her minor children, and as administratrix of Remick’s succession and individually. The prayer of the bill was for the recognition of the oratrix as the widow of Cavailhez; that the property be decreed that of the succession, subject to her right to one-half; that the marriage between Cavailhez and Ernestine Diaz be decreed void; that the sale to Remick be annulled, and finally that the debt claimed by the ora-' trix, for her funds received by Cavailhez, be recognized, with legal mortgage on his half of the property. The suit resulted in the decree on January, 1886, recognizing the oratrix as the widow of Cavailhez, and her rights as such; the decree annulled the sale-to Remick; the donation by' Cavailhez to Mrs. Remick, recognized the debt and mortgage claimed by the oratrix, and adjudged she should be put in possession of the property.
Soon after this decree Mrs. Cavailhez, thus recognized as the wife of Cavailhez, died, and by last will instituted F. Chapuis her heir. Then followed a suit in the nature of an ancillary bill in the United States Circuit Court by Lacassagne to protect his possession, but that failed by a dismissal on appeal to the United States Supreme Court *1163 without prejudice to his action at law. .While that suit was pending Ohapuis conducted a proceeding in the State Court, by which he claimed to become owner of the undivided half of the property, which, with the title claimed under the bill, he made the basis of the debt and mortgage he contracted to Abraham & Son, the present defendants, who in 1895 purchased under their foreclosure. Lacassagne, remitted by the decree of the United States Supreme Court of March, 1892, to his action at law, instituted his present suit in 1893, directed against Ohapuis as well as Abraham & Son.
We have gone over the facts presented in the record, because to some extent, at least, they - serve to illustrate tjjfi*|®sue, and have^ been discussed in the argument. But in our view the issue is very narrow. The case comes here on the question only of res judicata. We find it unnecessary to discuss the question so elaborately argued, of the jurisdiction of the United States Circuit Court to render the judgment on which the exception is based of defendant, Mrs. Cavailhez.
The argument to sustain the exception of res judicata, or rather estoppel, as it is termed in the briefs, rests on the principle announced by our Code that the property claimed in the suit can not. be alienated pending the litigation, and the prohibition extends to suits for the enforcement of mortgages as well as petitory or possessory suits. Civil Code, Article 2453; Act No. 3 of 1878. There is no. question in our minds that the suit of Mrs. Cavailhez, was- of a. character to forbid any alienation during its pendency.. But the'difficulty of the defendant’s case is whether there was any alienation/ in the meaning of the law of this property during the suit of Mrs.. Cavailhez. There was no mortgage or sale other than the seizure-, and sale under the Maxwell mortgage. But that mortgage, given by one whose ownership was based on the titles spread for more than' fifteen ye irs on the public records, was created in 1883 before the-suit of Mrs. Cavailhez was brought, her bill having been filed in May,. 1884. The sale that occurred after the suit, was the sequel and enforcement of the pre-existing mortgage, which for all purposes of' this discussion is to be deemed good and valid, not assailed by pleadings or proof, unless it is contended there was no power in Cavailhez: to sell or in the purchaser under him to mortgage. In this view then,, before the pretensions of Mrs. Cavailhez were made known by any-suit, the property was charged with the mortgage conveying the/ *1164 right to seize and sell. Under that pre-existing mortgage plaintiff /holds.
All concede the principle announced by- the Code, prohibiting ¡alienations pendente lite, but has the principle any application to this controversy. Cavailhez was the unquestioned owner of this property in 1869. Married or not, he had the power to sell. He conveyed to Remick; Remick dying, his widow acquired at the succession sale. These titles were of record, and on the faith the law gives to recorded ownership, Mrs. Remick obtained Maxwell’s money and gave him the mortgage in 1883. It needs but the statement that the mortgagee who in good faith loans his money on the basis of the re - corded ownership, acquires a right not capable of being affected by any fraud of the owner in conveying title. In a leading case the court, dealing with a mortgage by the recorded owner in maintaining the mortgage against the children assailing as fraudulent the title made by their father to the party, who on the strength of his ownership, mortgaged the property, used this language: “Had the recorded owner sold to a third person ignorant of the fraud of the vendee, it can not be doubted the title of the purchaser would have been good; a mortgage is in the nature of an alienation, and the mortgage creditor with no knowledge of the fraud would be equally protected. Foster vs. Foster, 11 La. 408; Stockton vs. Craddick, 4 An. 286; Boudreau vs. Bergeron, 4 An. 83; Richardson vs. Hyams, 1 An. 286; Thompson vs. Whitbeck, 47 An. 49; Broussard vs. Broussard, 45 An. 1085. Thus before the institution of the suit of Mrs. Oavailhez, Maxwell had acquired his mortgage and the right to seize and sell the property for payment of the mortgage debt. That right he exercised and the plaintiff, Lacassagne, is a purchaser under that mortgage. Is ittobe maintained that this pre-existing vested right could not be exercised, but was defeated by the subsequent suit of this lady asserting rights under a marriage never known to the public, as we gather from the record, and claimed to have taken place inFrancemore than fifty years before her suit? The article of the Code that the property sued for can not be alienated, pending the suit, is not to be construed so as to divest rights acquired before the suit. Such construction would bring the article in palpable conflict with the protection accorded to vested rights. If Maxwell had no power to seize and sell under his mortgage, because of the institution of this suit^ brought after his mortgage was created, then his contract right was *1165 utterly destroyed by no act of his: by an adjudication to which he was no party, and made in a litigation of which he could have no notice when he acquired his right, because the litigation was begun after that right was vested. The law deems all are apprised of pending suits, and any one who buys or takes a mortgage on property after the suit is begun acquires with notice, and consequently subject to such judgment as may be rendered in the suit. All can appreciate the operation of that rule announced in the Code, but the other proposition challenges prompt dissent that a right acquired is destroyed by the subsequent institution of a- suit, of which there could be no notice when the third person acquired his title or mortgage. The line of authority cited by the defendants make the obvious application of the article of the Code forbidding alienations pending the suit for the property. The decisions refer to rights on property sued for, attempted to be created after the suit is brought. Barelli vs. Delassus, 16 An. 281; Taylor vs. Pipes, 24 An. 552, and others of the same type. The mortgage in this case, created before, could not he deemed affected, because of the subsequent suit and judgment, not directed against the mortgage creditor. But yet it is claimed the right conferred by the mortgage is swept away by that suit. The enforcement of the mortgage is-the assertion of the pre-existing right, and a sale under that mortgage under which plaintiff holds is, in our view, entirely without the scope of the article of the Code. This view, as we think, the fair interpretation of the Code, has been sustained in previous decisions cited. In our opinion the exception of res adjudicata should have been overruled.
If the sale by Cavailhez was a fraud on his wife and Maxwell, the mortgage creditor and the plaintiff holding under him are implicated in the fraud that would furnish a basis for relief to plaintiff. The case as presented here admits of no determination of that issue, and on that as on all questions, save that arising on the exception of res judicata, we give no opinion.
It is therefore ordered that the judgment of the lower court sustaining the exception of res judicata be avoided and reversed, and the case be remanded for trial on the merits.