(37 South. 484.)

No. 14,953.

CASEY v. H. ABRAHAM & SON et al.

(June 29, 1904.)

COSTS—TAXATION — PUBLIC ADMINISTRATION—
RECOVERY OF FUNDS.

1. The costs for which a party cast in a suit is liable cannot be liquidated and recovered in a direct action brought against him in the district court of his residence. They must be taxed in the original suit in the course of which they were incurred, and enforced through the court in which the suit was brought.

2. Where the public administrator has caused himself to be appointed dative testamentary executor of a succession, which had been closed by the sending of the heir therein into possession years before his appointment, and he has, as such dative testamentary executor, taken into his possession funds not belonging to that succession, the administrator of the succession, to whom the funds really belong, has a right to recover from him the funds in his hands by a direct action, and he cannot be required to proceed through an action for an accounting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Frederick D. King, Judge.

Action by M. L. Casey, administratrix, against H. Abraham & Son and others. Judgment for defendants, and plaintiff appeals. Modified.

William S. Benedict, for appellant. Dinkelspiel & Hart, for appellees H. Abraham & Son. Zengel, Thomas & Suthon, for appellee public administrator.

Statement of the Case.

NICHOLLS, J. Plaintiff sues as the administratrix of the succession of Laurent Lacassagne.

In her petition (filed on May 7, 1901) she averred: That on the 22d of October, 1885, the deceased was full owner of certain property, which she described. That on the 2d day of February, 1886, while the deceased was in the peaceable possession of said property and its appurtenances, with movables thereon, valued in a sum exceeding $5,000, he was ejected therefrom unlawfully under and by virtue of process of court in a cause in which said decedent was not a party, and possession given under said process to one Jeanne Caroline Cavailhez, widow of Jean Baptiste Cavailhez, and the said decedent and his estate were deprived of the possession of said property. That after a litigation from that time until the date hereinafter stated he prosecuted his rights, and thereafter same were prosecuted by administratrix to the end of righting the wrong so done, until possession was forced by legal process. That said proceedings culminated in a final decree of the Supreme Court of the United States, under which a final mandate was legally remitted to the court of first instance, the district court for the parish of Vermilion, and same was executed by delivery to administratrix of the said real estate on 29th January, 1901.

That petitioner found the said real estate to have been denuded of everything pertaining to the improvements thereon, with no horses, mules, cows, implements of agriculture, seed cane, cotton seed, or other articles requisite and necessary to make a crop thereon, the same having been thereon, and amounting in value to the sum as above stated as of date of such illegal dispossession of said decedent and the unlawful entry thereon of said Madam Cavailhez.

That said property was thereafter sold in due course of administration, and the proceeds under such sale duly accounted for ac-

cording to law. That she had in vain demanded of and from the defendants hereinafter named reparation for the injury and damages sustained by decedent and by his estate. That the said Madam Cavailhez departed this life on the 6th day of March, 1886, and that Francois Chappuis was named as residuary legatee of her estate, including the property aforesaid, under and by virtue of her last will and testament, duly probated in this court, under the number 17,091 of the docket, and that as such he assumed possession thereof, and that he departed this life on the 16th day of June, 1893. That during his lifetime he acted as the agent of the said Madam Cavailhez aforesaid, and that after her death, and under the will and decree as aforesaid as sole owner of the said property, he incurred debts and obligations to, amongst others, the firm of J. H. Abraham & Son, of the city of New Orleans, composed of Henry and Jacob H. Abraham, to whom he gave illegal mortgages, privileges, and pledges as against the property aforesaid.

That said firm of J. H. Abraham & Son, so acting under and by virtue of said illegal acts of the said Francois Chappuis, did thereafter illegally possess themselves of said property, its crops, of its rents and revenues, its proceeds, and convert the same to their own use in the entirety thereof from and after the 5th day of May, 1893, having under such alleged rights caused to be made to themselves, under illegal process, title to including all the movables thereon and appurtenant thereto, and the crops thereon raised, and retained such possession till said 29th day of January, 1901—say for eight years.

Petitioner further represented that the revenues of said property from and after the date of acquisition of title by petitioner decedent, as aforesaid, were of the full value of $1,000 per annum, and that no part or portion thereof or of the interest thereon had been accounted for to petitioner in the prem-

ises, and that the same were due and owing by and from the defendants hereinabove named from the date of their illegal possession, which was continuous in its nature, and entitled petitioner to damages as against each and every one of said defendants in solido of and for the injury, loss, and damage that had accrued in the premises for the full amount thereof. That the said Francois Chappuis departed this life on the 16th day of June, and his estate was by order of the court on the 6th of July, 1893, placed in possession of J. B. Vinet, as public administrator, acting as dative testamentary executor thereof. That thereafter letters of administration were issued in said succession to Frank Zengel, of the city of New Orleans, as public administrator, on the 3d of August, 1896, but no asset appeared in said estate other than an illegal claim to petitioner's property as aforesaid, but assets from its rents and revenues came into his possession, which were without deduction the property of petitioner. That in the cause aforesaid to obtain restitution of said property, its rent and revenues, there had been incurred by decedent and his administratrix the sum of $500 as costs, for which, under said final decree of the court of last resort, the defendants herein were liable and responsible to petitioner in the premises, for which claim was presently made.

In view of the premises petitioner prayed that Frank Zengel, public administrator, administering the estate of Francois Chappuis, the firm of J. H. Abraham & Son, and the individual members thereof, be cited to appear and answer herein, and that after due proceedings had there be judgment herein in favor of petitioner and against the said defendants in solido for the sum of $5,000, value of the movables on said property illegally removed therefrom and disposed of by said defendants, in the sum of $8,000 for the rents and revenues thereof, with legal interest on each $1,000 thereof annually from

January 1, 1893, till paid, in the costs and expenses accrued under and by virtue of the litigation aforesaid in the sum of $5,000, all with legal interest from judicial demand herein; with costs and all general and equitable relief.

The firm of J. H. Abraham & Son and the individual members excepted to the further prosecution of the suit on the grounds: That the petition of plaintiff disclosed no cause of action. (2) That the plaintiff's claims, if any, were barred by the prescription of one year.

(3) Should the above exceptions be overruled, then the respondents say that the allegations of the petition were too vague, indefinite, and uncertain to enable respondents to make proper answer thereto.

In view of the premises they prayed that these exceptions might be maintained, and plaintiff's suit dismissed, with costs.

Zengel, public administrator also excepted on the ground of nonjoinder of parties; (2) that the petition disclosed no cause of action; (3) that the allegations of the petition were too vague and indefinite to enable defendant to file an answer thereto.

In view of the premises he prayed that these exceptions be maintained, and this suit be dismissed, at plaintiff's cost.

The court ordered the exceptions to be referred to the merits. Under reservation of the exceptions the public administrator answered, first pleading the general issue. He then averred that, as appeared by the record of the succession of Mrs. Widow J. B. Cavailhez, one Francois Chappuis was appointed testamentary executor, and that he be qualified as such about 1886; that he remained executor till the time of his death in 1892; that meanwhile a protracted litigation had commenced relative to the title to a certain plantation in Vermilion parish, wherein the succession of Cavailhez and Laurent Lacassagne and the defendant Abraham were the contending parties, each claiming title; that

this litigation lasted over 15 years, the case having gone to the state Supreme Court several times, and twice to the United States Supreme Court. Petitioner alleged that Francois Chappuis, as testamentary executor of the succession of Mrs. J. B. Cavailhez, represented said estate in said litigation, and that it was necessary that said estate should be a party to said litigation; that some time after the death of Chappuis, there being no one to represent the estate of Cavailhez in the litigation then pending, Gen. J. B. Vinet, the then public administrator, was asked to qualify as the dative testamentary executor of the succession of Cavailhez for the purpose of making proper parties in the said suit; that accordingly, on the 7th day of July, 1894, said Vinet qualified as dative testamentary executor; that Vinet so continued as such until August, 1896, when respondent became his successor in the office of public administrator, and as such was continued in office as dative testamentary executor of the succession of Cavailhez. Respondent averred that he knew nothing of any spoliation committed upon the said plantation whereby it was stripped of its movables, and that, if any did occur, (which was denied), it was done long before the death of Francois Chappuis in 1892; that when J. B. Vinet was appointed dative testamentary executor the plantation was in a state of dilapidation, and in charge of a keeper, who had been left there by Chappuis —a man named Constantin—who preferred a large claim for services as a keeper; that the plantation, being the subject of litigation, could not be improved or cultivated or leased to a responsible person, as no one would rent it in its dilapidated condition except upon a long lease, which was impossible under the circumstances; that Constantin threatened to leave and abandon the property unless paid the sum of $1,000 as keeper's fees; that J. B. Vinet, public administrator, to whom the claim was presented, was at the same time approached by one P. Le Danois, who

offered to rent the place for a small rental, and with the consent of all parties, including the Lacassagne interests, he was placed upon the property for a nominal rental, as much to preserve and gradually improve the same as for the rent he might be able to pay. Respondent alleged that Le Danois remained on the property until the end of the litigation, and paid various sums to Vinet and to respondent, an account of which respondent had submitted to all parties in interest, and which sum he was ready to account to the proper party under orders of this court.

In view of the premises respondent prayed that this suit be dismissed as against him at plaintiff's cost, and for all such further orders and relief as might be necessary, and for all and general relief.

The firm of H. Abraham & Sons and its members answered under reservation of the exceptions. They pleaded the general issue, and adopted the answer of Zengel, public administrator, as far as same might be applicable to them, but averring that they had no knowledge of the other parties referred to in the answer.

On the 28th of October, 1902, plaintiff filed a supplemental petition, in which she alleged: That from the 1st day of March, 1886, to the 7th day of July, 1893, under and by reason of contracts, agreements, advances, and payments had and made between Francois Chappuis on the one part and the firm of H. Abraham & Son on the other part, the said firm of H. Abraham & Son being well aware of petitioner's sole ownership as legal representative of her deceased father, the sum of $8,000, as claimed in the original petition, was had and realized by said H. Abraham & Son of and from the fruits and benefits, the revenues and movable properties of the real estate described in the original petition, and for which the said defendants H. Abraham & Son were liable and responsible to petitioner. That on and after the 7th of

July, 1893, to the 29th of January, 1901, the said real estate went into and continued in the possession of J. B. Vinet and Frank. Zengel, public administrators for the parish of Orleans, and said H. Abraham & Son, and realized the sum of $8,000 in rents and revenues thereof. That said Vinet accounted to said Zengel, as his successor in office, to his satisfaction, and the said Vinet was now dead, and his official funds were in the possession of Frank Zengel, public administrator, who was liable to petitioner, with said H. Abraham & Son, for the sum aforesaid, Zengel having taken possession on the 3d of August, 1896, legally, but his codefendants in some respects retained possession.

That the said real estate was inventoried in the succession of L. Lacassagne, of which petitioner was the administratrix. That a sale thereof was enjoined by J. H. Abraham, of said firm of H. Abraham & Son, averring he was the administrator of the estate of Francois Chappuis, and claiming ownership thereof as such, and same could not be dissolved till final decree of the United States Supreme Court.

That the proceeds of sale of the vacant real estate thereof was duly accounted for to this court, in charge and custody of said estate, by the accounts herein duly presented and homologated.

The items and costs generally stated in the original petition as being $500 consisted of the costs of the Supreme Court of the United States, those of the clerk of the Supreme Court of Louisiana, the costs of the writ of possession under formal decree of the Supreme Court of the United States, the costs of the transcripts in the suits of Nos. 11,970 and 12,906, the costs of briefs in the Supreme Courts of the United States and of Louisiana. That other costs and expenses were incurred arising out of and from the illegal acts of defendants in the expenses attendant upon the taking of testimony and

costs paid, for which no actual voucher had or could be obtained by reason of the death of Laurent Lacassagne, in the sum of $150.

That the possession of the joint defendants herein was continuous in its nature from the first-named date of said illegal possession to the date of repossession of petitioner by agreements had and contracts made, the revenues of said property during said period of time amounting to the sum set forth in the original petition.

That the district court of the parish of Vermilion is functus officio, in the matter of the firm of H. Abraham & Son, and the said public administrators, both of whom were herein before the court under the original citation herein, and who reside in the city of New Orleans, and had always there so resided; and that the rents, revenues, and movables, which were herein the subject of litigation could only be claimed and adjudged at the domicile of said defendants in the parish of Orleans.

In view of the premises petitioner prayed that this supplemental and amended petition be ordered filed; that the firm of H. Abraham & Son and said Frank Zengel, public administrator, be cited to appear and answer thereto; and that, after due proceedings had, there be judgment in her favor as prayed for in her original petition, and for costs and all general relief in the premises.

Both defendants excepted to the filing of the supplemental petition on the ground that it changed the issues in the original petition, and therefore it should not be received, or evidence heard in support of it.

No action seems to have been taken upon these exceptions.

H. Abraham & Son and Jacob H. Abraham pleaded the prescription of three, five, and ten years.

The district court rendered judgment in favor of the defendants against plaintiff, rejecting her demand. Plaintiff moved for a new trial on the ground that the judgment was clearly contrary to the law and the evidence in this: (a) That the final decree of the Supreme Court ordered the defendants in this cause to pay costs. (b) That one of the defendants—the public administrator—admitted he had in his hands to the credit of plaintiff a sum exceeding $900, on which he claimed some diminutions, illegal in their character. (c) That the damages claimed arose pending the possession by defendants of the plaintiff's property. (d) That the entire burden of the proof was upon defendants to show with exactness the revenues thereof, failing in which the amounts stated by plaintiff were below what had been realized.

The new trial was refused, and plaintiff appealed.

### Opinion.

This case has been twice before this court, as will be seen by reference to 48 La. Ann. 1160, 20 South. 672 (Laurent Lacassagne v. H. Abraham), and to 51 La. Ann. 840, 25 South. 441 (Laurent Lacassagne v. H. Abraham & Son et al.).

The parties to the suit which was instituted on the —— day of ——, 1893, were Laurent Lacassagne as plaintiff, and Francois Chappuis, H. Abraham & Son, and the sheriff of the parish of Vermilion, defendants. The prayer of the petition was that said parties be cited; that an injunction issue to prohibit the sale of the property described therein, which was advertised as to be made on the 13th of May, 1893; that the property be decreed to belong to plaintiff free from any incumbrance created thereon by Chappuis; that it be ordered to be restored to his possession; and that H. Abraham & Son be authorized (decreed) to pay him the sum of $1,000 damages. An injunction issued as prayed for under order of court. The district court rendered judgment sustaining an exception of res judicata and estoppel which was filed in the case on behalf of defendants, and rejected plain-

tiff's demand, and dismissed his suit. On appeal to the Supreme Court this judgment was reversed, and judgment rendered in favor of the plaintiff (his succession being then represented by Marie L. Casey, as administratrix), he having died pending the suit, recognizing him to be the owner of the property in litigation, ordering and decreeing that the administratrix be sent into possession thereof, and for that purpose a writ of possession was directed to issue. The judgment further sustained and perpetuated the injunction which had issued in the case, and decreed the property to be free from all mortgages placed upon it by F. Chappuis or asserted against it by H. Abraham & Son.

A writ of error was taken to the Supreme Court of the United States from that judgment, but on hearing the judgment was affirmed (144 U. S. 119, 12 Sup. Ct. 659, 36 L. Ed. 368), and it was carried into effect by delivery of the property to the administratrix on the 29th of January, 1901.

During that suit Francois Chappuis, who had been appointed testamentary executor of the estate of Jeanne Caroline Cave, widow of J. B. Cavailhez, and universal legatee under her will, intervened in the suit as testamentary executor of that estate. Francois Chappuis having died, Jacob H. Abraham made himself a party as administrator of his succession, and J. B. Vinet, public administrator, made himself a party as dative testamentary executor of Jeanne Cave Cavailhez, widow of J. B. Cavailhez.

In the petition in that suit the plaintiff alleged that under an order which had issued from the district court for Vermilion parish in the suit of H. Abraham & Son v. Francois Chappuis, the sheriff of Vermilion parish had seized and advertised for sale on the 13th of May, 1893, the property described in his petition, and of which he claimed the ownership; that neither of the parties to that suit had any interest, or claim, or right, or title whatever in and to the property so seized; that specially the defendant Chappuis was without such interest or right of ownership in petitioner's said property, and it was not liable for any of his debts, or for any created by him as bearing upon the same; that the proposed sale of the property for the debts of another was illegal, unjust, and oppressive, would work him irreparable injury, and had damaged him to the extent of $1,000, $500 of which was for attorney's fees and $500 for actual damages; and that said damages and injury would continue and be irreparable unless an injunction should issue.

The facts of the two cases referred to will be found in the 48th and 51st La. Ann. Reports (20 and 25 South.), and in 144 U. S. 119, 12 Sup. Ct., 36 L. Ed.

It may be well to recapitulate them briefly.

One J. B. Cavailhez, a Frenchman, came to Louisiana, and there married Ernestine Diaz. From this marriage there was issue—one child, a daughter named Marceline, who married C. H. Remick. Cavailhez made a sale of the property in litigation to Remick, his son-in-law, and, Remick dying, his widow, Marceline, purchased the property at a sale made in the matter of his succession. While so holding the property, she mortgaged it to one Maxwell. In the meantime Cavailhez had died, and his wife, Ernestine Diaz, also. While matters were in this situation, a woman appeared who claimed to be the legal wife of Cavailhez; that he had abandoned her in France; that his subsequent marriage in Louisiana was null and void, having been contracted in bad faith, and both parties to the marriage were aware of the facts of the case; that the property which had been transferred to Remick belonged to the community between herself and Cavailhez; that the sale to Remick was a fraudulent simulation, designed to defraud her of her rights in the property. Acting upon her theory of the case, she brought suit in the United States District Court holding sessions at

Opelousas, setting out her supposed rights as just stated, and making defendant in the suit widow of Remick individually and as tutrix of the children of her marriage with Remick. She prayed to have the sale to Remick set aside as fraudulent and simulated and decreed to be herself the owner of an undivided half of the property, as widow in community, and for judgment recognizing that she was a creditor of the community for $5,000 of paraphernal funds which her husband had received and converted to his own use. Judgment was rendered in her favor as prayed for. Lacassagne, whose interests will now be stated, was not made a party to this suit. While this suit was pending, Maxwell foreclosed the mortgage which he held upon the property which had been executed in his favor by Mrs. Remick, and at the foreclosure sale, which was made during the pendency of the suit in the United States court, Maxwell and Lacassagne purchased the property. Maxwell sold his undivided half to Lacassagne, who was in possession of the same as owner when Mrs. Cavailhez, who had obtained the judgment referred to, obtained a writ of possession, and under it ejected Lacassagne from the premises.

He thereupon sought in the United States court, on the 15th of April, 1886, to obtain an injunction quieting him in his possession, asserting as a fact that the writ of possession had not been legally or completely executed. The United States court refused the injunction, and Lacassagne carried the case by appeal to the Supreme Court of the United States.

That court, on the 21st of March, 1892, affirmed the judgment (144 U. S. 119, 12 Sup. Ct. 659, 36 L. Ed. 368), holding that when the application for an injunction was applied for the writ of possession had been executed; that Lacassagne was at that time out of possession, and was attempting through an injunction to regain possession—in other words, to be restored by injunction to rights which he had already lost; that the function of an injunction was to afford preventive remedy, not to redress alleged wrongs which had been already committed; that an injunction would not be used to take property out of the possession of one person and put it in another—citing High on Injunction (2d Ed.) § 355. The court, however, remitted the plaintiff to an action at law.

In the interval between the institution of this last-mentioned suit and its termination the property remained in its entirety in the possession of the widow of Cavailhez and her son-in-law, Francois Chappuis, acting as her agent.

On the 6th of March, 1886, Mrs. Cavailhez died, leaving a will, by which she appointed Francois Chappuis her testamentary executor with seizing, and constituted him her universal legatee. The will was probated and Chappuis sent into possession. While in possession he cultivated the property, H. Abraham & Son being his factors or commission merchants. The result of this cultivation was unfortunate. Chappuis became heavily indebted to Abraham & Son, and in representation of his debt executed several mortgage notes in their favor, secured by special mortgage on the property involved in this litigation.

On the 11th of February, 1893, H. Abraham & Son brought a suit via ordinaria against Francois Chappuis upon these mortgage notes and on the ―――― day of April, 1893, obtained a judgment against him for $3,392, with interest, with recognition of mortgage and right to seize and sell. On the 14th day of April, 1893, a. fi. fa. issued upon this judgment directed to the sheriff of Vermilion parish or parish of Orleans. Under this writ of fi. fa. the sheriff of the parish of Vermilion seized the property in litigation, and advertised it for sale, but before the sale the sale was stayed by injunction at the suit of Laurent Lacassagne, he asserting

ownership of the property, and praying to be recognized as such and placed in possession.

This is the suit already referred to, which, after two judgments rendered by this court, the last of which judgments recognized Lacassagne as the owner of the property and ordered a writ of possession to issue and place him in possession, and which judgment was ultimately affirmed by the Supreme Court of the United States. It is the same suit in which the property under decree of court was finally delivered into the possession of the plaintiff on the 29th of January 1901.

The present suit followed.

It should have been stated that the undivided half of the property which had not been decreed to belong to Mrs. Cavailhez, but to have remained in her deceased husband as head of the community, was sold at a private sale made in the matter of his succession to pay debts, and was purchased at the succession sale by Francois Chappuis, his succession having been placed under administration. When Francois Chappuis mortgaged the property to H. Abraham & Son the entire property was mortgaged and seized under this judgment.

Francois Chappuis died June 16, 1893. An inventory was made in his succession, and an undivided half of the property in litigation, with all the buildings and improvements thereon, without further description, appraised at $3,400; the undivided half of the growing crop thereon appraised $100; and one wagon, an old buggy and harness, one plow, one harrow and cultivator, one cow, two gentle horses, one flat boat and rope—these last-mentioned movables appraised at $155. Jacob H. Abraham, a member of the firm of H. Abraham & Son, was appointed administrator of his succession.

Although it appears from the pleadings that the property in litigation was seized under the judgment of H. Abraham & Son, there is no evidence to show that the sheriff ever took possession under the seizure. The testimony does not show who had actual possession. Plaintiff alleged that on and after the 6th of July, 1893, to the 29th of January, 1901, the real estate went into and continued in the possession of J. B. Vinet and Frank Zengel, public administrators for the parish of Orleans. She averred that Zengel had taken possession legally on the 3d of August, 1896, but that the codefendants had in some respects retained possession. She averred that Vinet, who was then dead, had accounted to Zengel, and that Zengel was accountable directly to her.

A witness in this case by the name of Le Danois testified that he was placed upon it on the 15th of August, 1896, and took charge of it until he left on the 20th of December; that he was placed on the property as keeper by Judge Voorhies in place of one Constantin Engelman (Judge Voorhies had been counsel of Mrs. Cavailhez). Le Danois testified that Engelman had been on the place as keeper. After Chappuis' death from 1893 to 1896 she rented it out to tenants during that time to live and pay taxes. He says that the administrator rented the cotton gin to Mr. Le Blanc for $150 a year, he thought, from 1896 to 1900. He testified that he had paid over to Frank Zengel $650. He says that the improvements on the place were (when he went on the place in 1896) a residence, a building used for a store and barn and corncrib, four cabins for tenants, one horse, who died from old age; that in 1900 he left the place in better condition than he found it in 1896, but everything was old, and needed serious repairs. There was no sugar house nor machinery excepting the cotton mill mentioned, which was 10 or 12 years old, and in bad order. There were no agricultural implements, nor cows, hogs, or sheep; in fact, nothing more than what he had at first stated. He says he did not know, but was told by his employés, that Chappuis had had the sugar house and machinery torn

down and removed. He said he had no knowledge of H. Abraham & Son having had possession of the place.

The testimony shows that J. B. Vinet, public administrator for the parish of Orleans, dative testamentary executor of the succession of Mrs. Cavailhez, assumed charge of the property after his appointment as testamentary executor, and was in possession of the property on the 25th of August, 1893, and that Zengel, as his successor in office, continued to do so; that as such successor he had received from Vinet, his predecessor (testamentary executor of Mrs. Cavailhez), the sum of $267.40. Zengel, in his answer, states that Le Danois had paid various sums to Vinet and himself, and he had an account of the same to the parties in interest, and that he was ready to pay the amount over to the proper party under order of court. He makes no mention of the amounts he himself received other than that which he received from Vinet. The only evidence on this subject is the statement made by Le Danois in his testimony that he had paid over $650 to Zengel. The judgment of the district court was evidently rendered upon the theory that the amounts due for costs should have been taxed in the suit of Lacassagne v. H. Abraham & Son in the parish of Vermilion, and not by direct action against Abraham & Son in the parish of Orleans, and that the amounts received by Vinet and Zengel, having been received in their representative capacities as testamentary executors, those parties should have been called to account in the succession of Mrs. Cavailhez, and not sought to be made accountable by direct action, as was attempted here. We think that neither Vinet nor Zengel was authorized to administer this as property belonging to the succession of Mrs. Cavailhez. Mrs. Cavailhez's succession had been opened, and Chappuis had qualified as testamentary executor. By the will he had been constituted her universal legatee. As

such he had been sent into possession without opposition, and thereby this property passed out of the succession of Mrs. Cavailhez into the ownership and possession of Chappuis. We do not think the appointment, after Chappuis' death, of Vinet, public administrator, as dative testamentary executor of Mrs. Cavailhez, had the effect ipso facto of bringing the property back into her succession. We think under the circumstances of this case the proper party to have thereafter administered that property was. the administrator of the succession of Chappuis.

Zengel avers his readiness, whenever he can do so with safety, to pay to the proper persons himself. Zengel, public administrator, as dative testamentary executor of Mrs. Cavailhez, has moneys in his hands which do not belong to that succession, but which,. as matters stand and have shaped themselves, belong to the succession of Lacassagne. He is suable for those moneys in a. direct action to administrator.

We do not find in the record any evidence which would render the firm of H. Abraham & Son liable to the plaintiff in damages. The fact that while Francois Chappuis was in possession of the property they became his. factors, received the crops from that property, and accounted to Chappuis for them, does not render the firm responsible to Lacassagne or his succession for the crops so received and the funds so turned over to Chappuis. They were not estopped from dealing with Chappuis as owner of the property because he was not owner thereof in fact and in law. When the firm did so deal with him they were bound to account to Chappuis as their principal. H. Abraham made a seizure of the property as against Chappuis, but it seems to have been a paper seizure; and under plaintiff's pleadings, if possession was taken by the sheriff, it did not continue for any length of time. The suit brought by Lacassagne himself

against H. Abraham & Son, Chappuis, and the sheriff was a petitory action, in which $1,000 damages were claimed. Plaintiff did not amend his pleadings to claim additional damages as the case proceeded, and when final judgment was rendered in the case the claim for damages was ignored entirely. H. Abraham & Son persisted in their claim in that suit that Chappuis was the legal owner of the property, and that it was liable to them even up to the final judgment in the Supreme Court of the United States, and as the penalty for so doing they were subjected to the payment of all costs. We are of the opinion that the district court was correct in requiring plaintiffs to liquidate and enforce their demands for costs in the district court for Vermilion parish.

Francois Chappuis and his succession are responsible to the succession of Lacassagne for fruits and revenues and damages, unless the claim is barred.

The judgment appealed from is erroneous in not rendering judgment against Zengel.

For the reasons assigned it is hereby ordered, adjudged, and decreed that the judgment appealed from, in so far as it is in favor of Frank Zengel, public administrator and dative testamentary executor of Jeanne Cave Cavailhez, be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered and adjudged that judgment be, and it is hereby, rendered in favor of the succession of Lacassagne, represented by the plaintiff, as administratrix, against Frank Zengel, public administrator for the parish of Orleans, dative testamentary executor of the succession of Jeanne Cave Cavailhez, for $917.40, with costs of suit in both courts. It is further ordered, adjudged, and decreed that the judgment appealed from, in so far as it rejects plaintiff's demand against H. Abraham & Son for fruits, revenues, and damages, be, and the same is hereby, affirmed. It is further ordered, adjudged, and

decreed that the right of the succession of Laurent Lacassagne to recover costs from the firm of H. Abraham & Son and the individual members thereof in other proceedings, as also the right of said succession to prosecute any claim which it may have against the succession of Francois Chappuis, be, and the same is, expressly reserved.