On Rehearing.
PROVOSTX, J.
Dr. McCulloch, in 1886, executed his mortgage note for $4,500, due January 1, 1890, and bearing 8 per cent, interest after maturity. He died in 1889. He left a widow and several children issue of his. marriage. Between him and his surviving wife the community of acquets and gains had existed, and the debt was a community debt, and the property mortgaged to secure it was community property. The widow qualified at once as administratrix of the succession, and continued in office until 1897, when, on the joint petition of herself and the heirs (all majors), judgment was rendered closing the succession, sending her and the heirs into possession as joint owners, she for one-half as survivor in community, and they for one-half as heirs of their father, and, at the same time, recognizing her as usufructuary of the said half interest of the heirs,, her children. The said mortgage note had not been paid when the succession was thus closed, so that the said debt became the joint debt of the widow and the heirs, she for one half and each of the heirs for his virile share of the other half. During her administration, the widow had paid the interest on the note each year as it became due; and, after the succession had been thus closed and she gone into possession as usufructuary, she continued to pay this interest each year. After she had made 11 such yearly payments, foreclosure proceedings were instituted on the mortgage note, and the present suit was brought by the heirs, enjoining the foreclosure proceedings as to their half of the property, on the ground that as to them the note was prescribed.
The defendant contends that the mother of the plaintiffs, joint owner and joint debtor with them and usufructuary of their half of the property, was by tacit mandate their agent in making the payments of interest on this joint debt bearing mortgage upon the entire property, and that consequently the payments were acknowledgments of the debt, and had the effect of interrupting prescription.
*346 The $4,500 mortgage note became due and payable on the 1st of January, 1890, and the succession was closed in 1897. When the parties came to consider the matter of the closing of the succession, the mortgage note had long matured, and was past due and ex-igible. The law contemplated that its payment should be met in one of three ways: First, the regular and usual way, by selling enough of the property of the succession to pay it; second, by the heirs advancing the money to pay it, if they wished to avoid a sale of their property; third, and last alternative, -by the usufructuary advancing the money. This is expressly laid down in article 585 of the Code. Counsel for plaintiffs say that this article of the Code does not apply to ordinary usufructs, or to the usufruct of the survivor in community, but only to the usufruct constituted by universal legacy. But counsel would have some trouble in finding elsewhere the law governing these other usufructs, in the respects provided for by this article; and, certainly, these other usufructs are governed in these respects by some law. There can be no doubt at all that this article 585, and the cognate articles, have general application, although apparently treating only of testamentary usufructs. This peculiarity of the verbiage of these articles has been induced by the fact that in the old civil law, or prior to the existence of the law creating the usufruct of the survivor in community, usufructs were most frequently established by testament. For the payment of said debt thus due and payable, the parties in the present case followed neither one of the three modes thus prescribed by said article 585. They adjusted the situation differently; that is to say, they had recourse to an arrangement outside of the said provisions of the Code. Whether this arrangement was the result of an express agreement or merely of a tacit understanding makes absolutely no difference. In either case it had its origin and its being in the consent of the parties.
The plaintiffs knew that their half of this debt was their debt and in no way, shape, or form due by their mother, the usufructuary. They knew that the creditor, the defendant in the present suit, had ho, action against their mother, the usufructuary, for their said half of the debt, but could compel them to pay it, and at once. They knew that one-half of the property was theirs, and was responsible for the payment of their half of the debt. They knew, therefore, that when their co-owner and codebtor, their mother, the usufructuary, obtained time on their half of the debt by making the yearly payments of interest, she was thus obtaining time on a debt which was not hers, but was solely and exclusively theirs. She did it with their knowledge, and necessarily with their consent, either express or tacit — it makes no difference which. Had the succession been fully and finally settled, in the ordinary and usual legal course, and only the residuum of the property, after payment of all debts, been left for the usufruct to bear on, a portion of plaintiffs’ half of the property corresponding in amount with plaintiffs’ half of the debt would have had to be sold. This property of plaintiffs which would have thus been sold was left in the possession of the usufructuary with the understanding, express or tacit (it does not matter which), that the usufructuary would carry plaintiffs’ said half of the debt by paying this interest. That is to say, that the usufructuary should hold plaintiffs’ property and carry plaintiffs’ debt; that she should do so by receiving the revenues of plaintiffs’ half of the property, and paying with them the interest on plaintiffs’ half of the debt. Hence the usufructuary was expressly or tacitly — -it does not matter which — made plaintiffs’ agent for carrying the debt by the payment of interest.
The only decision bearing directly, one *348 way or the other, on the point we are considering that we have been able to find, is that of the Court of Cassation of Prance, in Cazavant v. Lapeyre, Pau, 27 Juin, 1853, Journal du Palais, 1854, vol. 2, p. 472, where the court said:
“Considering that Gerard Cazavant, in possession of the entire inheritance by the consent of his coheirs, was the negotiorum gestor of the succession, and that, in paying in that quality the arrears on this debt, he did nothing more than pay a legitimate and nonprescribed debt; that had he acted differently he would have exposed his coheirs to a lawsuit which it was his duty to avoid; considering that he liberated the succession from a real and subsisting debt; considering that, while article 2249, C. N., provides that the acknowledgment does not interrupt prescription with regard to the other heirs — this provision cannot apply to a case where, as in the present instance, the coheir who acknowledged the debt was the tacit mandatary of his coheirs, and was acting in the quality of manager and administrator of the common property, since in such a case his act is the act of those having a joint interest with him in the property.”
The court held that the acknowledgment made by this tacit agent had interrupted the prescription.
In the present case, the plaintiffs certainly contemplated and expected that their co-owner and joint debtor, the usufructuary, should make these payments on their half of the debt; and, as every one is conclusively’ presumed to know the law, they must be conclusively presumed to have known that these payments would interrupt prescription on the debt. If these payments did not interrupt prescription as to plaintiffs’ half of the debt, we have the anomaly of payments being made on a debt without prescription being interrupted thereby. No doubt, if payments were made on a debt by a mere intermeddler, prescription would not be interrupted. But the joint debtor of the plaintiffs and joint Owner with them of the property upon which the debt was secured by mortgage and usufructuary of their half of said property was not an intermeddler. She had the right, nay, under the circumstances, owed the duty to plaintiffs, to pay this interest, in order that the property might not be seized and sold, as is now being done, to satisfy the debt. Nothing can show more clearly that by making these payments she was attending to plaintiffs’ business, or, in other words, was acting as their tacit agent, than this fact of the effect of said payments having been to prevent and put off the foreclosure proceedings which plaintiffs are resisting in the present suit.
Analogy for such an interruption of prescription by the act of a tacit agent is presented by those cases where the joint owner and the joint creditor have been held to be the tacit agent of his co-owner or coereditor for interrupting prescription, because of their community of interest. Flower v. O’Connor, 17 La. 213; Becnel v. Waguespack, 40 La. Ann. 112, 3 South. 536; Blanc v. Dupre, 36 La. Ann. 847; Satterley v. Morgan, 33 La. Ann. 846; B. J. Wolf & Sons v. New Orleans Tailor-Made Pants, 110 La. 428, 34 South. 590; Casey v. H. Abraham & Son, 113 La. 588, 37 South. 484; Boyd v. Heine, 41 La. Ann. 393, 6 South. 714.
It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the suit of plaintiffs be dismissed, and the injunction herein dissolved, and that there be judgment in favor of defendant and against plaintiffs in solido for $100 damages and the costs of this suit.
See dissenting opinion of BREAUX, C. J., 53 South. 600.