**ELMWOOD PLANTATION, INC.**

v.

**RUUD WATER HEATER DIVISION, et al.**

**Civ. A. No. 84–2509.**

United States District Court,
E.D. Louisiana.

Dec. 2, 1985.

Donald A. Hammett, Kevin O'Bryon, Hammett, Leake & Hammett, New Orleans, La., for plaintiff.

Dermot S. McGlinchey, Eve Barrie Masinter, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendant.

MENTZ, District Judge.

## FINDINGS OF FACT

## AND

## CONCLUSIONS OF LAW

The plaintiff, Walbrook, Ltd. (Walbrook), in its capacity as an excess insurer of Ruud Water Heater Division, City Investing Company (Ruud), has brought this action against National Union Fire Insurance Company (National), Ruud's primary insurer. Succinctly stated, Walbrook is seeking the recovery of amounts allegedly paid by Walbrook but owed by National in satisfaction of a judgment rendered in favor of Elmwood Plantation, Inc., (Elmwood) and against their mutual insured, Ruud.

This Court held a non-jury trial on September 12, 1985 and the matter was subsequently taken under submission. Having reviewed the evidence, the memoranda of counsel, and the applicable law, the Court now enters its Findings of Fact and Conclusions of Law. To the extent that overlap exists between them, the Court's Findings of Fact and Conclusions of Law are to be treated interchangeably.

## FINDINGS OF FACT

### (1)

On December 17, 1979, Elmwood Plantation, Inc., filed suit No. 233–829 against Ruud, et al, in the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana. This case was bifurcated for separate trials on the issues of liability and damages.

### (2)

On July 26, 1982, after trial on the issue of liability, judgment was rendered in favor of Elmwood and against Ruud and LaMatt Agency, Inc. On June 22, 1983, the Louisiana Fifth Circuit Court of Appeal affirmed the determination of liability as to Ruud but reversed the judgment against LaMatt Agency, Inc. See *Elmwood Plantation v. Ruud Water Heater Division*, 435 So.2d 507 (La.App. 5th Cir.1983). Costs were assessed against Ruud.

### (3)

The damages sustained by Elmwood occurred during the policy periods of a primary policy of insurance issued by National to Ruud with limits of ONE MILLION DOLLARS ($1,000,000), an excess policy of insurance issued by Walbrook and other excess companies and underwriters at interest with limits of FIVE MILLION DOLLARS ($5,000,000), and a final layer of insurance issued by Lloyd's of London with limits of FIFTEEN MILLION DOLLARS ($15,000,000).

### (4)

The trial on damages was then held and on July 21, 1983, the state court entered judgment in the sum of FOUR AND ONE-HALF MILLION DOLLARS ($4,500,000) in favor of Elmwood Plantation, Inc., and against Ruud "with interest at the rate of 1% per month, or any part of a month, from and after August 21, 1983". The judgment further ordered Elmwood to pay to the Intervenors, California Union Insurance Company and Lexington Insurance Company, the respective amounts of their claims.

### (5)

On July 21, 1983, the Honorable Lionel R. Collins, the District Court Judge, signed an order which reflected that the judgment was actually a Consent Judgment. The Order expressly reserved the rights of the insurers to litigate their liability for "costs

of Court, attorney fees and other expense items". The Order also reserved Walbrook's rights to recover costs, expenses and attorney fees from National. Walbrook did not reserve its rights as to interest. In the Order, National reserved all of its rights against Walbrook and the other excess insurers.

### (6)

On July 21, 1983, Elmwood Plantation, Inc., and Ruud, through their attorneys, signed an Agreement recognizing the fairness of the amount of the consent judgment. The parties agreed that they would not (1) seek a new trial in this case, (2) seek to have the judgment nullified, altered, amended or changed, or (3) seek costs. The Judgment, Order and Agreement do not provide for the payment of interest, costs or attorney's fees either as part of or in addition to the lump sum settlement amount of FOUR MILLION FIVE HUNDRED THOUSAND DOLLARS ($4,500,-000) nor does it designate any amounts which are to be considered as interest, costs or attorney's fees.

### (7)

The excess coverage underwritten by Walbrook and California Union obligated California Union to pay 20% of the FIVE MILLION DOLLAR ($5,000,000) limit of liability and Walbrook to pay 80% of the FIVE MILLION DOLLAR limit of liability. The Judgment was paid in full prior to August 21, 1983 by National paying $1,000,000, Walbrook paying $2,800,000, and California Union paying $700,000.

### (8)

The recovery of $4,500,000 by Elmwood Plantation, Inc., was distributed as follows:

| | |
|---|---|
| California Union Insurance Company | $ 117,076.71 |
| Lexington Insurance Company | 303,000.00 |
| Reimbursement of Attorney Costs | 160,045.26 |
| To Elmwood Plantation, Inc. | 2,351,926.82 |
| To Elmwood's attorneys | 1,567,951.21 |
| TOTAL DISBURSEMENTS | $4,500,000.00 |

### (9)

After the proceeds were received and disbursed by John J. McCann, Elmwood's attorney, a Satisfaction of Judgment was filed in the State Court record. Elmwood did not file a Rule to Tax Costs or to Assess Legal Interest either before or after the filing of the Satisfaction of Judgment.

### (10)

Elmwood's costs and attorney fees were paid in full out of the money received from the insurers of Ruud. The National policy provides that National will pay, in addition to its ONE MILLION DOLLAR ($1,000,-000) limit of liability:

"... All expenses incurred by the company, all *costs taxed against the insured* in any suit defended by the company and all *interest* on the entire amount of any judgment therein *which accrues after entry of the judgment* and before the company has tendered or deposited in Court that part of the judgment which does not exceed the limit of the company's liability thereon". (Emphasis added.)

### (11)

Walbrook's policy No. 650/781350 provides that Walbrook and certain other excess insurers will pay:

*Coverage*

*... all sums* which the Assured shall be obligated to pay by reason of the liability:

a.   Imposed upon the assured by laws, or

b.   *Assumed under contract or agreement* by the Named Assured and/or any officer, director, stockholder, partner or employee of the Named Assured, while acting in his capacity as such, ... (Emphasis added.)

*Limit of Liability*

Underwriters hereon shall be only liable for the ultimate net loss in *excess of either:*

a. *The limits of the underlying insurance* as set out in the attached schedule in respect of each occurrence covered by said underlying insurances; or

b. $25,000.00 ultimate net loss in respect of each occurrence not covered by said underlying insurance. (Emphasis added.)

(12)

The National policy is set out as an underlying insurance policy in the schedule attached to excess insurers' policy No. 650/781350.

(13)

Elmwood incurred $6,310.45 in court costs and expenses with the Clerk of Court for the Twenty-Fourth Judicial District Court and the Jefferson Parish Sheriff's Office. Elmwood paid $2,523.00 in court costs and expenses and the remaining amount was paid by or on behalf of the defendants.

(14)

Nelville Landry represented Ruud and the insurers at the trial on damages. Mr. Landry's bills were paid in full by General Adjustment Bureau and he has no further claim for costs, expenses or attorney's fees. John Marks represented Walbrook and other excess underwriters after the liability judgment was rendered against Ruud. Mr. Marks participated in the trial on damages and was present when the Judgment, Order and Agreement were drafted by the parties. Dermot S. McGlinchey represented National at the conclusion of the damage aspect of the trial and was present when the Judgment, Order and Agreement were drafted by the parties.

(15)

Walbrook has made the following claims:

(a) The $4,500,000 consent judgment was a lump sum figure which included all interest, costs and attorney's fees.

(b) National owed its policy limits of ONE MILLION DOLLARS $1,000,000, legal interest from date of judicial demand to date of judgment on

the policy limits, or $375,000.00, Elmwood's Court costs which were included as part of the $4,500,000 judgment and totaled $160,045.26; Elmwood's attorney's fees of $1,567,951.21 which were included as part of the $4,500,000 judgment.

(c) Walbrook paid these amounts on behalf of National and is entitled to recover these sums, plus legal interest, from National.

CONCLUSIONS OF LAW

(1)

The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, diversity of citizenship.

(2)

Walbrook's legal claims against National arise under Articles 1855 (formerly 2134) and 1829 (formerly 2161) of the Louisiana Civil Code.

(3)

La.Civ.Code Ann. Art. 1855 states that:

Performance may be rendered by a third person, even against the will of the obligee, unless the obligor or the obligee has an interest in performance only by the obligor.

Performance rendered by a third person effects subrogation only when so provided by law or by agreement.

(4)

La.Civ.Code Ann. Art. 1829 provides in pertinent part that:

Subrogation takes place by operation of law:

(3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment, . . . .

(5) In the other cases provided by law.

(5)

La.Code Civ.Proc.Ann. Art. 1920 (West 1961) governs the taxing of costs in state district courts and reads as follows:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the Court may render judgment for costs, or any part thereof, against any party, as it considers equitable.

(6)

In Louisiana, a rule to tax costs may be filed after a final and executory judgment. See La.Rev.Stat.Ann. 13:3666(B)(2) (West 1968); *Bentley v. Industrial Fire Protection, Inc.*, 350 So.2d 982, 984 (La.App. 2d Cir.1977). The finality of the judgment would not be disturbed by a simple numerical determination of some item already adjudged. A judgment on a rule to tax costs is only incidental to the main suit in which an executory judgment for costs has already been rendered. See *Crichton v. Krouse*, 150 So. 443 (La.App. 2d Cir.1933). Although the suit is terminated, costs remain an incident of the suit and one of its issues until paid. *Bentley, supra*, at 984, citing *Morries v. Zeller*, 4 Orl.App. 411 (1907).

(7)

Expert witness fees are an element of costs and are to be fixed by the trial judge after the trial of a rule to tax the fees as costs. See, *Daly v. Abramson*, 117 So.2d 772 (La.App. 2d Cir.1960); *Jansky v. Lucich*, 159 So.2d 730 (La.App. 4th Cir.1964).

(8)

The costs for which a party cast in a suit is liable cannot be recovered in a direct action in the district court, but must be taxed in the original suit in which they were incurred, and enforced in the court in which the suit was brought. *Casey v. H. Abraham & Son*, 113 La. 581, 37 So. 484 (1904).

(9)

When experts are called to testify at trial, the amount of their fees can be fixed by the court with reference to the value of time employed, the degree of learning or skill required, and properly taxed as costs under R.S. 13:3666. *State, Through Dept. of Highways v. Salemi*, 249 La. 1078, 193 So.2d 252, 254 (1966). The amount agreed upon between the expert witness and the party calling him is not a criterion as to the amount of expert witness fees to be taxed as costs. *Town of Krotz Springs v. Weinstein*, 401 So.2d 664, 665, 667 (La.App. 3d Cir.1981). Expert witnesses are entitled only to reasonable compensation for their appearance in court and for preparatory work done, and the fees allowed should be in line with those allowed in similar cases, *Id.*

(10)

Walbrook claims that it is entitled to reimbursement from National of the $1,567,951.21 paid by Elmwood to its attorneys. The Court notes that Elmwood sued Ruud alleging causes of action under general tort principles embodied in La.Civ.Code Ann. Art. 2315 (West 1979) and redhibition as defined in La.Civ.Code Ann. Art. 2520 *et seq.* Elmwood also made a claim for attorney's fees in accordance with the holding of the Louisiana Supreme Court in *Philippe v. Browning Arms Co.*, 395 So.2d 310 (La. 1981) (on rehearing).

(11)

After reviewing the evidence and the testimony of Mr. McCann, Mr. Landry, Mr. Marks and Mr. McGlinchey, the Court concludes that attorney fees were not a separate item of recovery for Elmwood Plantation. The silence of the July 21, 1983 Judgment is tantamount to a rejection of Elmwood's claim for attorney's fees. See, *Succession of Foster*, 240 La. 269, 122 So.2d 96 (1960); *Palama v. Palama*, 338 So.2d 776 (La.App. 4th Cir.1976).

(12)

In Louisiana, attorney fees and expenses of preparing for trial are not taxable as costs and can only be awarded where authorized by statute or contract. See, *Parish v. Bill Watson Ford*, 354 So.2d 727, 728 (La.App. 4th Cir.1978), *writ denied*, 356 So.2d 1005 (La.1978). Attorney's fees are not ordinarily allowable or taxable as

"costs" and are not included within the word "costs". *Merrigan v. Metropolitan Life Ins. Co.*, 43 F.Supp. 209, 211 (E.D.La. 1942). Walbrook has not carried its burden of proof and has not proven that National is liable for the payment of Elmwood's attorney's fees under the National policy.

(13)

■ Walbrook also claims that its payment of $3,500,000 included payment of legal interest owed by National. In Louisiana, legal interest attaches from date of judicial demand on all judgments "sounding in damages, 'ex delicto', which may be rendered by any of the courts." La.Rev. Stat.Ann. 13:4203 (West 1968).

(14)

The July 21, 1983 judgment provided that interest would accrue "at the rate of 1% per month, or any part of a month, from and after August 21, 1983". The Court accepts Mr. McCann's testimony that the judgment was paid in full prior to August 21, 1983 and concludes that no legal interest was assessed against or owed by Ruud.

(15)

■ Mr. McCann also stated that Elmwood had no additional claims to assert and had filed a Satisfaction of Judgment in the State Court record. A Satisfaction of Judgment operates as a bar to Elmwood's right to have the State Court tax costs or assess legal interest. By filing the Satisfaction of Judgment in the state court record, Elmwood judicially confessed that *all* of its claims as set forth in the July 21, 1983 Judgment had been satisfied. If any of Elmwood's costs were unpaid by Ruud, Elmwood, by filing the Satisfaction of Judgment, was estopped from asserting any claim of any nature whatsoever against Ruud. *See* La.Civ.Code Ann. Art. 1953 (West Supp.1985).

(16)

Walbrook's claims of third party performance and legal subrogation are without merit. Walbrook has proven how the FOUR MILLION FIVE HUNDRED THOUSAND DOLLARS ($4,500,000) was distributed by Elmwood. However, Walbrook has failed to prove that it paid any sum which was rightfully owed by National. After a careful examination of the testimony and evidence presented at trial, the Court concludes that National discharged all of its obligations as the primary insurer of RUUD.

(17)

Judgment is rendered in favor of National and against Walbrook. Walbrook is to pay all costs of this proceeding.